**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-534-NRN

**MIDWEST INSULATION SERVICES INC.,**

> Plaintiff on Behalf of Itself
> And Those Similarly Situated

>   **v.**

**JOHNS MANVILLE CORPORATION,**

> Defendant.

---

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

**[ORAL ARGUMENT REQUESTED]**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ......................................................................................................................1

BACKGROUND ......................................................................................................................3

LEGAL STANDARD...............................................................................................................4

ARGUMENT ...........................................................................................................................5

I.      Substantially All of Midwest's Claims Are Time-Barred ...................................5

II.     Midwest Lacks Standing To Assert State Law Claims Outside Nebraska .........................7

III.    Midwest Fails To Plausibly Allege Offensive Non-Mutual Collateral Estoppel ...............8

IV.    Midwest Fails To Plausibly Allege Anticompetitive Conduct, Antitrust Injury, or a
Relevant Geographic Market .........................................................................................10

V.     Midwest's State Law Damages Claims Do Not Satisfy Various States'
Requirements, and They All Fail With Its Federal Antitrust Claim Anyway ...................14

VI.    The Court Should Dismiss Midwest's Claims With Prejudice...........................................15

CONCLUSION......................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abbot Labs. v. Durrett*,
    746 So. 2d 316 (Ala. 1999) ................................................................................15

*Anziulewicz v. Bluefield Cmty. Hosp., Inc.*,
    531 F. Supp. 49 (S.D. W. Va. 1981) ...............................................................15

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*,
    204 Cal. App. 4th 1 (2012) ..............................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................4

*Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*,
    2023 WL 7277313 (D. Colo. Sept. 29, 2023) ......................................10, 13, 14

*B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*,
    439 F.3d 653 (10th Cir. 2006) ......................................................................9, 12

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
    166 F. Supp. 3d 988 (N.D. Cal. 2015) ...............................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................4

*Belnap v. Steward Health Care Sys. LLC*,
    2020 WL 619402 (D. Utah Feb. 10, 2020) ......................................................12

*Brooks v. Mentor Worldwide LLC*,
    985 F.3d 1272 (10th Cir. 2021) ..........................................................................4

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986) .........................................................................................10

*Chase Manufacturing, Inc. v. Johns Manville Corp.*,
    No. 19-cv-00872-MEH (D. Colo.) ........................................................ *passim*

*Collins v. Sonic Corp.*,
    2022 WL 2298194 (W.D. Okla. June 22, 2022) ...............................................15

*In re Dewey*,
    237 B.R. 783 (B.A.P. 10th Cir. 1999) ....................................................................10

*Edgar v. Teva Pharm. Indus., Ltd.*,
    2024 WL 1282436 (D. Kan. Mar. 26, 2024) .............................................................5

*Exxon Corp. v. Time Indus., Inc.*,
    1974 WL 838 (E.D. Mich. Feb. 7, 1974) ................................................................15

*Gee v. Pacheco*,
    627 F.3d 1178 (10th Cir. 2010) .............................................................................6

*Intel Corp. v. Fortress Inv. Grp. LLC*,
    511 F. Supp. 3d 1006 (N.D. Cal. 2021) ................................................................12

*Iron Workers Dist. Council of New England Health & Welfare Fund v. Teva
    Pharm. Indus. Ltd.*,
    734 F. Supp. 3d 145 (D. Mass. 2024) ...................................................................15

*Kaw Valley Elec. Co-op. Co. v. Kansas Elec. Power Co-op., Inc.*,
    872 F.2d 931 (10th Cir. 1989) ...............................................................................6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    383 F. Supp. 3d 187 (S.D.N.Y. 2019) ...................................................................13

*Lawrence v. UMLIC-Five Corp.*,
    2007 WL 2570256 (N.C. Super. June 18, 2007) ...................................................15

*Leech v. Levi Strauss & Co.*,
    1980 WL 4696 (Tenn. Ch. Sept. 25, 1980) .............................................................5

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    762 F.3d 1114 (10th Cir. 2014) ............................................................................11

*In re Linerboard Antitrust Litig.*,
    223 F.R.D. 335 (E.D. Pa. 2004) .............................................................................5

*In re Lipitor Antitrust Litig.*,
    336 F. Supp. 3d 395 (D.N.J. 2018) .......................................................................14

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    2004 WL 7081446 (D.D.C. May 18, 2004) .............................................................5

*Maryland Staffing Servs., Inc. v. Manpower, Inc.*,
    936 F. Supp. 1494 (E.D. Wis. 1996) .....................................................................15

*Mata v. Anderson*,
635 F.3d 1250 (10th Cir. 2011) ..................................................................................6

*Maysonet v. Citi Grp., Inc.*,
2011 WL 476610 (S.D.N.Y. Feb. 9, 2011) ................................................................9

*Mountain View Pharmacy v. Abbott Labs.*,
630 F.2d 1383 (10th Cir. 1980) ................................................................................11

*Mueller Co. v. U.S. Pipe & Foundry Co.*,
2003 WL 22272135 (D.N.H. Oct. 2, 2003) ..............................................................15

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
2018 WL 1524005 (N.D. Cal. Mar. 28, 2018) ...........................................................9

*In re Nifedipine Antitrust Litig.*,
335 F. Supp. 2d 6 (D.D.C. 2004) ...............................................................................6

*Oliver v. SD-3C LLC*,
751 F.3d 1081 (9th Cir. 2014) ...................................................................................5

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979) ...................................................................................................8

*In re Photochromic Lens Antitrust Litig.*,
2011 WL 13141933 (M.D. Fla. Oct. 26, 2011) ........................................................13

*Pistacchio v. Apple Inc.*,
2021 WL 949422 (N.D. Cal. Mar. 11, 2021) ...........................................................12

*In re Revlimid & Thalomid Purchaser Antitrust Litig.*,
2024 WL 2861865 (D.N.J. June 6, 2024) ................................................................14

*Ryan v. Microsoft Corp.*,
2015 WL 1738352 (N.D. Cal. Apr. 10, 2015) ...........................................................7

*Smith v. Pizza Hut, Inc.*,
2011 WL 2791331 (D. Colo. July 14, 2011) ..............................................................7

*Stan Lee Media, Inc. v. Walt Disney Co.*,
774 F.3d 1292 (10th Cir. 2014) .................................................................................8

*Supreme Auto Transp. LLC v. Arcelor Mittal*,
238 F. Supp. 3d 1032 (N.D. Ill. 2017) .....................................................................13

*Surat v. Klamser,*
    2020 WL 886220 (D. Colo. Feb. 24, 2020) ...............................................................6

*Tal v. Hogan,*
    453 F.3d 1244 (10th Cir. 2006) ...........................................................................11

*In re Tamoxifen Citrate Antitrust Litig.,*
    277 F. Supp. 2d 121 (E.D.N.Y. 2003) ............................................................10, 15

*Tate v. Pac. Gas & Elec. Co.,*
    230 F. Supp. 2d 1072 (N.D. Cal. 2002) .............................................................12

*Thomas v. Metro. Life Ins. Co.,*
    540 F. Supp. 2d 1212 (W.D. Okla. 2008) ...........................................................7

*Thomas v. Metro. Life Ins. Co.,*
    631 F.3d 1153 (10th Cir. 2011) ...........................................................................7

*Estate of True v. C.I.R.,*
    390 F.3d 1210 (10th Cir. 2004) ...........................................................................8

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.,*
    964 F.2d 1022 (10th Cir. 1992) .........................................................................12

*In re Urethane Antitrust Litig.,*
    2013 WL 6587972 (D. Kan. Dec. 16, 2013)........................................................10

*In re Urethane Antitrust Litig.,*
    409 F. Supp. 2d 1275 (D. Kan. 2006) ................................................................5

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP,*
    540 U.S. 398 (2004)...........................................................................................10

*In re Wellbutrin XL Antitrust Litig.,*
    260 F.R.D. 143 (E.D. Pa. 2009)..........................................................................8

*Wellington Specialty Ins. Co. v. Ling,*
    2009 WL 529229 (N.D. Tex. Mar. 3, 2009) ......................................................8

*Wilson v. City of Aurora,*
    455 F. App'x 792 (10th Cir. 2011) .....................................................................6

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    401 U.S. 321 (1971)............................................................................................5

## **Statutes**

15 U.S.C. § 15b ................................................................................................................. 5

Ala. Code § 6-2-38*(l)* .......................................................................................................... 5

Ariz. Rev. Stat. § 44-1410 ................................................................................................. 5

Cal. Bus. & Prof. Code § 16750.1 ..................................................................................... 5

Colo. Rev. Stat. § 6-4-119(1) ............................................................................................ 5

D.C. Code § 28-4511(b) ..................................................................................................... 5

Iowa Code § 553.16 ........................................................................................................... 5

Kan. Stat. § 60–512(2) ....................................................................................................... 5

Me. Rev. Stat. tit. 14, § 752 .............................................................................................. 5

Mich. Comp. Laws § 445.781 ............................................................................................ 5

Minn. Stat. § 325D.64 ........................................................................................................ 5

Miss. Code § 15–1–49 ........................................................................................................ 5

N.C. Gen. Stat. § 75-16.2 ................................................................................................... 5

N.D. Cent. Code § 51-08.1-10 ........................................................................................... 5

N.H. Rev. Stat. § 356:12 .................................................................................................... 5

N.M. Stat. § 57-1-12 .......................................................................................................... 5

N.Y. Gen. Bus. Law § 340 ................................................................................................. 5

Neb. Rev. Stat. § 25-207 .................................................................................................... 5

Nev. Rev. Stat. § 598A.220 ............................................................................................... 5

Or. Rev. Stat. § 646.800 ..................................................................................................... 5

R.I. Gen. Laws § 6-36-23 ................................................................................................... 5

S.D. Codified Laws § 37-1-14.4 ........................................................................................ 5

Tenn. Code § 28-305 .......................................................................................................... 5

Utah Code § 76-10-3117(2) ................................................................................................5

Vt. Stat. tit. 12, § 511 .......................................................................................................5

W. Va. Code § 47-18-11 ....................................................................................................5

Wis. Stat. § 133.18 ............................................................................................................5

## <u>Other Authorities</u>

Fed. R. Civ. P. 8(a)(2) ......................................................................................................14

Fed. R. Civ. P. 12(b)(1) .....................................................................................................6

## INTRODUCTION

Plaintiff Midwest Insulation Services, Inc. ("Midwest") is an insulation contractor that indirectly purchased calsil manufactured by Defendant Johns Manville Corporation ("JM"). Midwest brings this putative class action asserting federal and state antitrust claims as a follow-on to a 2019 case filed by JM's competitor: Thermal Pipe Shields, Inc. ("TPS"). Midwest's barebones First Amended Complaint (Dkt. 13-1, "FAC") fails to state a claim and should be dismissed.[1]

*First*, Midwest's federal antitrust claim, as well as most of its state law claims (including under Nebraska law), are time-barred, as they have a four-year (or less) limitations period. Midwest explicitly and exclusively bases its claims on JM's alleged conduct from 2018 and 2019—well before February 19, 2021, the outside edge of the limitations period. While Midwest attempts to rely on the verdict from TPS's case against JM, that only confirms the untimeliness of Midwest's claims, as the public docket from that case indicates that the verdict only involved conduct through June 2020. And while Midwest alleges that the conduct "continues" to the present, that is a naked conclusion unsupported by any factual allegations and therefore does not suffice.

*Second*, Midwest is the only named plaintiff. As a Nebraska resident, it lacks standing to assert claims under other states' laws, meaning 25 of its 26 state-law claims fail at the outset.

*Third*, Midwest's efforts to rely on the verdict from the earlier *TPS* case—currently on appeal to the Tenth Circuit—to assert that "JM cannot relitigate its monopolization" fail. While Midwest attempts to invoke the doctrine of collateral estoppel, it does not (and cannot) plausibly allege that the doctrine precludes JM from defending itself. The *TPS* case and this one involve

---

[1]  Counsel for Midwest and JM met and conferred in good faith by phone regarding this motion on April 2, 2025. They were unable to resolve their differing views, necessitating this motion.

different claims, covering different time periods, on behalf of different plaintiffs, pursuing different theories. Indeed, Midwest itself acknowledges that the gravamen of its claims—alleged "monopoly overcharge antitrust price injury" and resulting "damages"—were ***not*** litigated in *TPS*.

***Fourth***, Midwest's claims all require it to plausibly allege anticompetitive conduct, antitrust injury, and a relevant geographic market. But far from sufficiently establishing all of these elements, its allegations are entirely conclusory and establish none. As to anticompetitive conduct, Midwest challenges threats JM supposedly made to its customers and disparagement of TPS and TPS's calsil. But aside from invoking the earlier *TPS* case (which involved conduct that is years stale), Midwest never alleges any post-2019 threats or disparaging statements, and thus does not plausibly allege anticompetitive conduct that ***maintained*** JM's supposed monopoly in the years since. As to antitrust injury, Midwest alleges it and other indirect purchasers paid prices "higher than competitive levels," but does not allege at all how JM's alleged conduct vis-à-vis TPS and distributors somehow caused higher downstream prices for calsil that distributors sold to Midwest and other indirect purchasers. Lastly, as to the relevant geographic market, Midwest alleges nothing about the area of effective competition for sales to indirect purchasers.

***Fifth***, Midwest's hodgepodge of 26 state law claims are likewise conclusory. Midwest repeats its threadbare allegations for each state law claim, which are insufficient—particularly because many of the claims have unique elements that Midwest does not even try to establish through specific factual allegations. Even were the Court to consider Midwest's state law claims, those claims are substantively derivative of its federal antitrust claim and fail for the same reasons.

***Finally***, dismissal of Midwest's claims should be with prejudice. Midwest already amended its Complaint once. That amendment's failure to shore up the deficiencies in Midwest's

claims—and the inherent nature of those deficiencies—demonstrates that any further amendment would be futile, and this case should be dismissed for good.

## **BACKGROUND**

JM is a manufacturer and supplier of calsil. FAC ¶ 36. Calsil is a type of insulation material that—along with other types of insulation—can withstand high temperatures and be form-fitted for industrial equipment like pipes and tanks for use in industrial facilities. *E.g.*, *id.* ¶¶ 1, 3, 25.

Midwest is a Nebraska-based "insulation contractor[.]" FAC ¶¶ 14, 36. Midwest and other "industrial users and insulation contractors" do ***not*** purchase calsil directly from JM. *Id.* ¶¶ 5, 14, 36. Rather, JM sells its calsil to various distributors across the nation, and Midwest purchases from those distributors (or from others who purchase from those distributors, at some unspecified point in the distribution chain). *Id.* As such, Midwest and other industrial users and insulation contractors are "indirect purchasers," rather than "direct purchasers." *Id.* Midwest is the sole named plaintiff, and it seeks to represent two putative classes—a "Federal Calsil Injunctive Class" and a "State Calsil Indirect Purchaser Damage Class"—each comprised of "United States indirect purchasers" in 26 different states that bought JM calsil "on or after February 19, 2021." *Id.* ¶¶ 50, 60.

Midwest alleges that in March 2018, a calsil manufacturer named TPS entered the market as a competitor to JM. FAC ¶ 6. Midwest further asserts that JM responded by engaging in two forms of supposedly anticompetitive conduct: (1) "coercing distributors not to buy TPS's calsil" by threatening that JM "would not sell its products to them if they bought calsil" from TPS; and (2) disparaging "the quality of TPS's imported calsil to some distributors." *Id.* ¶¶ 40, 45, 49. Though it offers no supporting factual allegations or explanations, Midwest contends that this alleged conduct somehow caused it and other indirect purchasers to pay "above competitive prices

for JM calsil" even though they bought from "direct purchaser distributors, wholesalers, or other resellers," rather than from JM directly. *E.g.*, *id.* ¶¶ 60, 78.

Midwest's claims rely heavily on TPS's March 2019 lawsuit against JM: *Chase Manufacturing, Inc. v. Johns Manville Corp.*, No. 19-cv-00872-MEH (D. Colo.) ("*TPS*"). Midwest contends the 2024 verdict in that case against JM—which is currently on cross-appeal to the Tenth Circuit by both JM and TPS—"gives rise to collateral estoppel as to the monopolization violation" for purposes of Midwest's case. FAC ¶ 2.

Midwest filed this lawsuit on February 19, 2025. Dkt. 1. On March 7, 2025, the parties stipulated to an extension of JM's deadline to respond to April 4, 2025. Dkt. 10. Midwest filed its operative FAC on March 11, 2025. Dkt. 13. The FAC asserts a monopolization claim for injunctive relief under Section 2 of the Sherman Act and damages claims under the laws of 26 states.

## **LEGAL STANDARD**

Dismissal is appropriate where a complaint fails to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In construing a complaint, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, a plaintiff's factual allegations "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). And particularly in antitrust cases, courts "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed" given the extraordinary expense of discovery and litigation. *Twombly*, 550 U.S. at 558.

## ARGUMENT

### I.    Substantially All of Midwest's Claims Are Time-Barred

The vast majority of Midwest's claims fail at the outset because they are time-barred. Federal antitrust claims must generally be brought within four years of accrual, even for claims that only seek injunctive relief. 15 U.S.C. § 15b; *Edgar v. Teva Pharm. Indus., Ltd.*, 2024 WL 1282436, at *8 (D. Kan. Mar. 26, 2024) (citing *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014)). The vast majority of Midwest's state law claims—all but those of Maine, Vermont, and Wisconsin—are similarly subject to a four-year or less limitations period.[2] A claim accrues when a defendant commits an act that causes injury to the plaintiff. *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 338 (1971). Because JM's alleged conduct occurred more than four years before it filed this case, substantially all of its claims must be dismissed for this reason alone.

Midwest's FAC relies on alleged threats and disparagement Midwest itself claims occurred in 2018 and 2019. FAC ¶¶ 40, 43–49. Based on Midwest's own allegations, then, Midwest should have filed this case no later than 2022 or 2023; not years later, in 2025. *See In re Urethane Antitrust Litig*., 409 F. Supp. 2d 1275, 1284–85 (D. Kan. 2006) (dismissing antitrust claims at pleading stage where challenged conduct occurred more than four years prior to filing of lawsuit).

---

[2]    **Two years:** Ala. Code § 6-2-38*(l)*. **Three years:** *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 342 (E.D. Pa. 2004) (citing Kan. Stat. § 60–512(2)); *In re Lorazepam & Clorazepate Antitrust Litig.*, 2004 WL 7081446, at *1 (D.D.C. May 18, 2004) (citing Miss. Code § 15–1–49); *Leech v. Levi Strauss & Co.*, 1980 WL 4696, at *1 (Tenn. Ch. Sept. 25, 1980) (citing Tenn. Code § 28-305). **Four years:** Ariz. Rev. Stat. § 44-1410; Cal. Bus. & Prof. Code § 16750.1; Colo. Rev. Stat. § 6-4-119(1); D.C. Code § 28-4511(b); Iowa Code § 553.16; Mich. Comp. Laws § 445.781; Minn. Stat. § 325D.64.; Neb. Rev. Stat. § 25-207; Nev. Rev. Stat. § 598A.220; N.H. Rev. Stat. § 356:12; N.M. Stat. § 57-1-12; N.Y. Gen. Bus. Law § 340; N.C. Gen. Stat. § 75-16.2; N.D. Cent. Code § 51-08.1-10; Or. Rev. Stat. § 646.800; 6 R.I. Gen. Laws § 6-36-23; S.D. Codified Laws § 37-1-14.4; Utah Code § 76-10-3117(2); W. Va. Code § 47-18-11. **Six years:** Me. Rev. Stat. tit. 14, § 752, Vt. Stat. tit. 12, § 511, Wis. Stat. § 133.18. These claims substantively fail, as explained *infra*.

Midwest also relies on testimony and the verdict from the *TPS* case. FAC ¶¶ 2, 46–47, 49; *see also* Exs. A–C to FAC (attaching *TPS* jury verdict form, judgment, and post-trial order). But that only confirms the untimeliness of Midwest's claims because the *TPS* case, as the jury instructions confirm, only involved alleged anticompetitive conduct "occurring between March 8, 2018 and June 30, 2020," such that anticompetitive conduct "outside th[at] time period . . . would be . . . outside the scope of th[at] case." *TPS*, Dkt. 364 at 36 (JI No. 28). The Court can properly consider those jury instructions, both because Midwest itself relies on the record from that case and because publicly-available jury instructions are not subject to reasonable dispute. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (court can consider "documents that the complaint incorporates by reference"); *Surat v. Klamser*, 2020 WL 886220, at *4 (D. Colo. Feb. 24, 2020) (taking judicial notice of jury instructions from prior case when considering motion to dismiss).

Nor does the "continuing violation" doctrine save Midwest's claims. That doctrine provides that a claim may be timely where it is based on conduct that began **before** the limitations period, so long as the conduct **continues** into that period. *Kaw Valley Elec. Co-op. Co. v. Kansas Elec. Power Co-op., Inc.*, 872 F.2d 931, 933 (10th Cir. 1989). But the doctrine is "triggered 'by continual unlawful acts, not by continual ill effects from the original violation.'" *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011). Midwest clearly knows this, since it summarily alleges JM "has continued to exclude" competition through unspecified "exclusionary conduct." FAC ¶¶ 16, 55; Dkt. 13-2 at pp. 15–16. These bare assertions do not adequately allege overt acts within the limitations period, meaning the claims still fail.[3] *Wilson v. City of Aurora*, 455 F. App'x 792, 793

---

[3] Midwest's failure to plausibly allege continuing conduct also means there is nothing to enjoin, separately requiring dismissal of the federal antitrust claim for lack of jurisdiction under Rule 12(b)(1). *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 16, 18–19 (D.D.C. 2004).

(10th Cir. 2011) (affirming dismissal of claims as time-barred, as "conclusory allegations of a conspiracy lasting into 2009 were insufficient to invoke a continuing violation theory").[4]

## II.    Midwest Lacks Standing To Assert State Law Claims Outside Nebraska

As discussed *supra*, the vast majority of Midwest's claims—including its federal claim and 23 of its 26 state law claims—fail as a gating issue because they are time-barred. Separately, the Court need not even consider 25 of Midwest's 26 state law claims—all those besides Nebraska (where Midwest resides), including the three states with longer limitations periods (Maine, Vermont, and Wisconsin)—because Midwest, as a Nebraska resident and the sole named plaintiff, lacks standing to assert a claim under any other state's laws anyway.

"[N]amed plaintiffs lack standing to bring claims on behalf of a class under the laws of states where the named plaintiffs have never lived or resided." *Smith v. Pizza Hut, Inc*., 2011 WL 2791331, at *9 (D. Colo. July 14, 2011).[5] Midwest is the sole named plaintiff and a Nebraska resident. FAC ¶ 14. It thus lacks standing to assert 25 of its 26 state law claims, requiring dismissal of those claims. *Smith*, 2011 WL 2791331, at *9; *accord Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1226 (W.D. Okla. 2008) (dismissing "any state law claims alleged under the laws of any states where a particular named plaintiff is not a resident."). To do otherwise "would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states

---

[4]    *Accord Ryan v. Microsoft Corp*., 2015 WL 1738352, at *13 (N.D. Cal. Apr. 10, 2015) (antitrust claim time-barred because "bald assertion" that defendant's conduct "was a continuing violation" did not suffice without "specific conduct during the limitations period"); *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co*., 166 F. Supp. 3d 988, 999 (N.D. Cal. 2015) (similar).

[5]    "[P]rior to class certification, the named plaintiffs' failure to maintain a live case or controversy is fatal to the case as a whole[.]" *Thomas v. Metro. Life Ins. Co*., 631 F.3d 1153, 1159 (10th Cir. 2011). That a lawsuit "is styled as a putative class action" or "that unnamed plaintiffs might have a case or controversy is irrelevant." *Id.*

referenced in their complaint, to embark on lengthy class discovery with respect to injuries in"
many otherwise irrelevant states and "would present the precise problem that the limitations of
standing seek to avoid." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009).

### III.    Midwest Fails To Plausibly Allege Offensive Non-Mutual Collateral Estoppel

Midwest alleges that JM "cannot relitigate its monopolization under the law of collateral
estoppel." FAC ¶¶ 2, 54. Since Midwest was not a party to the *TPS* action, it seeks to apply
offensive non-mutual collateral estoppel, as outlined in *Parklane Hosiery Co. v. Shore*, 439 U.S.
322 (1979). That requires Midwest to establish: "(1) the issue previously decided is identical with
the one presented in the action in question, (2) the prior action has been finally adjudicated on the
merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party,
to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair
opportunity to litigate the issue in the prior action." *Estate of True v. C.I.R.*, 390 F.3d 1210, 1232
(10th Cir. 2004). Midwest comes nowhere close to establishing these requirements.

Midwest does not allege facts that would establish any of these elements, let alone all of
them. Instead, Midwest merely asserts in a conclusory fashion that collateral estoppel applies. FAC
¶¶ 2, 54. That does not suffice. *See Stan Lee Media, Inc. v. Walt Disney Co*., 774 F.3d 1292, 1297
(10th Cir. 2014) ("the party invoking" collateral estoppel "has the burden of establishing [the] four
separate elements"); *see also Wellington Specialty Ins. Co. v. Ling*, 2009 WL 529229, at *3–*4
(N.D. Tex. Mar. 3, 2009) (dismissing claim where complaint did not establish these elements).

For one, there is a lack of identity of issues. Here, public documents and Midwest's FAC
confirm that the *TPS* case and this one involve different time periods. *Compare TPS*, Dkt. 364, at
36 (jury instruction confirming *TPS* case only involved alleged anticompetitive conduct between

March 8, 2018 and June 30, 2020), *with* FAC ¶ 50 (Midwest and other putative class members purchased calsil on or after February 19, 2021); *see In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2018 WL 1524005, at *7 (N.D. Cal. Mar. 28, 2018) (collateral estoppel inapplicable where case involved "new antitrust challenges to conduct, in a different time period"); *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 663 (10th Cir. 2006) ("matters adjudged as to one time period are not necessarily an estoppel to other time periods"). Where, as here, "a motion to dismiss is premised on the doctrine of collateral estoppel, a court is permitted to take judicial notice of and consider the complaints and the record generated in both actions without having to convert the motion to dismiss into a summary judgment motion." *Maysonet v. Citi Grp., Inc.*, 2011 WL 476610, at *1 n.4 (S.D.N.Y. Feb. 9, 2011).

Similarly, as Midwest itself alleges, the *TPS* case involved **competitor** claims by TPS against JM, whereby TPS asserted that it was harmed by JM's alleged conduct and sought lost profits. FAC ¶ 1. Here, by contrast, Midwest alleges that JM's alleged conduct purportedly harmed Midwest and other indirect purchasers by causing them to pay "higher" prices for JM calsil. *Id.* ¶ 57. The *TPS* case thus focused on direct sales to distributors and harm to a competitor, while Midwest's case purports to focus on downstream sales from distributors, wholesalers, and resellers to end-customers and harm to those end-customers based on an alleged overcharge. That matters, and indeed Midwest concedes this is a material difference between the cases. *See* FAC ¶ 17 ("monopoly overcharge antitrust price injury and damages . . . were not at issue" in *TPS* case "and the overcharge remedy sought here does not overlap with the TPS remedy in any way").

All of this confirms that Midwest raises distinct claims that rely on alleged conduct over different periods that supposedly impacted different market participants in different ways as

compared to the *TPS* case. It would be both non-sensical and unfair to allow Midwest to use collateral estoppel as a sword to establish issues in this case that were not and could not have been decided in the *TPS* case. *See In re Dewey*, 237 B.R. 783, 790 (B.A.P. 10th Cir. 1999) ("Offensive estoppel should never be applied when it would be unfair given the circumstances"); *In re Urethane Antitrust Litig.*, 2013 WL 6587972, at *5 (D. Kan. Dec. 16, 2013) (declining to apply collateral estoppel against defendant in antitrust case due to prejudice and risk of jury confusion).

## IV.    Midwest Fails To Plausibly Allege Anticompetitive Conduct, Antitrust Injury, or a Relevant Geographic Market

Midwest's FAC fails to plausibly allege any anticompetitive conduct during the limitations period, any antitrust injury caused by anything that JM supposedly did, or a relevant geographic market. All are required elements of a federal antitrust claim, and each is lacking here. *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (monopolization claim requires "anticompetitive *conduct*"); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113, 122 (1986) (plaintiff "seeking injunctive relief" under federal antitrust law "must show a threat of antitrust injury"); *Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 2023 WL 7277313, at *4 (D. Colo. Sept. 29, 2023) (plaintiff must define relevant geographic market). Midwest concedes that these elements also apply to its state law claims, as it asserts that those claims are "construed consistent with a federal monopolization claim[.]" FAC ¶ 21. Because Midwest fails to plausibly allege any, its claims all fail. *Trinko*, 540 U.S. at 407; *In re Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d 121, 139 (E.D.N.Y. 2003) (dismissing "state antitrust law claims" where "based on the same allegations" as federal antitrust claims and plaintiffs agreed "state antitrust law should be construed similarly to federal antitrust law").

**Anticompetitive Conduct.** Midwest challenges two types of alleged conduct by JM: (1)

threats to withhold JM's products from distributors if they bought from TPS; and (2) "disparaging the quality of TPS's calsil to distributors by falsely raising concerns about asbestos and silica particles." FAC ¶¶ 40, 43–49. Midwest's conclusory allegations fail as to each theory.

As discussed *supra*, Midwest makes no specific allegations of threats after 2019. Instead, Midwest vaguely refers to an alleged handful of threats from between 2018 and 2019. FAC ¶¶ 40, 43–49. So aside from being time-barred, Midwest's claims fail because they do not sufficiently allege threats that supposedly allowed JM to ***maintain*** its monopoly after 2019. While Midwest alleges JM "has maintained" its supposed market power "to the present," Midwest's conclusory allegation that JM engaged in anticompetitive conduct by making unspecified "threats" is supported by no specific factual allegations, *i.e.*, what threats, when made, or to whom made. *Cf. Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) ("bald allegations of 'conspiracy' and 'bid-rigging' are insufficient . . . and are no better than claiming the defendants violated 'the antitrust laws' in the abstract."); *Mountain View Pharmacy v. Abbott Labs*., 630 F.2d 1383, 1387–88 (10th Cir. 1980) (antitrust claim properly dismissed where it "failed to allege any specific act").

Midwest's allegations as to "disparagement" similarly falter. Disparagement is presumed to have "only a *de minimis* effect on competition." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1127 (10th Cir. 2014). An antitrust plaintiff "may rebut this presumption by satisfying a six-factor test, showing that the disparagement was: (1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible to neutralization or other offset by rivals." *Id*. While Midwest vaguely refers to isolated incidents (such as in 2018) where JM supposedly suggested TPS's products contained silica and/or asbestos

(FAC ¶¶ 40, 49), that comes nowhere close to plausibly alleging facts that satisfy these specific elements, requiring dismissal of Midwest's disparagement-based claims. *See Tate v. Pac. Gas & Elec. Co.*, 230 F. Supp. 2d 1072, 1080 (N.D. Cal. 2002) (dismissing disparagement-based antitrust claim at pleading stage for failure to "allege[] sufficient facts . . . under the six-factor test.").

**Antitrust Injury.** Even if Midwest plausibly alleged anticompetitive conduct (it does not), its claims all nonetheless fail because Midwest does not plausibly allege either antitrust injury or a causal connection between that supposed injury and the challenged conduct. That requires dismissal. *Belnap v. Steward Health Care Sys. LLC*, 2020 WL 619402, at *3 (D. Utah Feb. 10, 2020) (antitrust plaintiff must demonstrate "an antitrust injury" and "also show a direct causal connection between that injury and a defendant's violation of the antitrust laws"); *B-S Steel*, 439 F.3d at 667–68 (10th Cir. 2006) (similar, for antitrust injunctive relief claim).

Midwest's purported injury is "supra-competitive pricing" for JM calsil, which supposedly stems from JM's alleged conduct. FAC ¶¶ 16, 57, 66. But "[t]he use of antitrust 'buzzwords' does not supply the factual circumstances necessary to support [plaintiff's] conclusory allegations." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026–27 (10th Cir. 1992) (affirming dismissal of antitrust claim). So, Midwest's naked assertion that prices were "higher" fails as a threshold matter. *Intel Corp. v. Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006, 1027–29 (N.D. Cal. 2021) (dismissing antitrust claim based on conclusory allegation of "supracompetitive prices"); *Pistacchio v. Apple Inc.*, 2021 WL 949422, at *2 (N.D. Cal. Mar. 11, 2021) (similar, where no "substantive allegations regarding the alleged 'supracompetitive' price").

Even if the Court were to credit Midwest's barebones assertions of "higher" prices (it should not), Midwest's claims still fail because the FAC does not plausibly allege ***how*** JM's

alleged conduct led to Midwest and other indirect purchasers paying higher prices. The complained

of conduct is JM's alleged threats and disparagements to distributors. FAC ¶ 40. But the FAC

provides no explanation of how JM's conduct directed at **distributors** affected the prices that

**indirect purchasers** like Midwest later **paid to others** (not JM) at some unspecified point down

the supply chain. *See In re Photochromic Lens Antitrust Litig*., 2011 WL 13141933, at *4 (M.D.

Fla. Oct. 26, 2011) (dismissing indirect purchasers' antitrust claims because complaint did not

plausibly trace their alleged "overcharge" to defendant's conduct); *Supreme Auto Transp. LLC v.

Arcelor Mittal*, 238 F. Supp. 3d 1032, 1039–41 (N.D. Ill. 2017) (similar, due to "conclusory

assertions about causal connections"). The closest Midwest comes is its assertion that JM's alleged

"monopoly prices charged for calsil to its distributors are passed on **all or in part**" to Midwest and

putative class members. FAC ¶ 16. But that is a naked conclusion (not a factual allegation), which

does not suffice. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp.

3d 187, 223–24 (S.D.N.Y. 2019) (dismissing indirect purchasers' claim for lack of causal antitrust

injury because allegations that defendant overcharged direct purchasers "and such overcharges

were passed on" to plaintiffs "in whole or in part" were "conclusory" and did "not preclude the

possibility that independent factors . . . could have led to the IPPs' purported damages").

    **Relevant Geographic Market.** The relevant geographic market is "the area of effective

competition," or "an area which products or services from adjacent areas cannot compete on

substantial parity with those offered inside the area, due to factors such as price,

transportation/delivery costs, customer preferences, etc." *Ass'n of Surgical Assistants*, 2023 WL

7277313, at *6. Midwest's sole factual allegation is that "[t]he demand for calsil is national and it

is sold to JM distributors at their respective locations throughout the United States." FAC ¶ 29.

That says nothing about the area of effective competition for sales **to indirect purchasers** (due to the factors listed above) and is conclusory and insufficient. *Ass'n of Surgical Assistants*, 2023 WL 7277313, at *6 (dismissing antitrust claims for failure to plausibly allege geographic market).

## V. Midwest's State Law Damages Claims Do Not Satisfy Various States' Requirements, and They All Fail With Its Federal Antitrust Claim Anyway

Midwest's state law damages claims separately fail because they improperly mask material distinctions between various states' laws. For each of its 26 state law claims, Midwest incants substantially the same barebones, conclusory paragraphs. FAC ¶¶ 67–92. Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that [Midwest] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Repeating the same generic paragraph for each state law does not allege "the elements of the various statutes or facts" that would permit "this Court to draw inferences that the elements have been met." *In re Revlimid & Thalomid Purchaser Antitrust Litig.*, 2024 WL 2861865, at *109–11 (D.N.J. June 6, 2024) (dismissing conclusory state law claims on this basis). Midwest's failure to "tailor facts to suit" each state law is more than a mere technicality. *Id.* at *110. The disparate elements of these laws highlight the infirmity of Midwest's approach.

**No Unilateral Conduct.** Midwest's claims are based on JM's "monopolization." But the laws of states like California, Kansas, New York, and Tennessee do not permit claims based on unilateral conduct, they only bar certain multilateral conduct (which Midwest admits it does not assert here, since it challenges only supposed "monopolization," *see, e.g.*, FAC ¶¶ 68, 73, 82, 88).[6]

**Intrastate Effects.** Midwest vaguely contends that JM's alleged conduct "substantially affected" each asserted state's "commerce." *E.g.*, FAC ¶ 74. Besides being conclusory, these

---

[6]   *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 8 (2012) (California); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 421 (D.N.J. 2018) (Kansas, New York, Tennessee).

allegations fail as some states—like Alabama, Michigan, Mississippi, New Hampshire, North Carolina, West Virginia, and Wisconsin—require that the conduct have a substantially intrastate effect or occur within that state.[7]

Even were the Court to consider Midwest's rote allegations as to each state law claim (it should not), they all fail with the federal claim. Midwest concedes each of its state law claims should be "construed consistent with a federal monopolization claim[.]" FAC ¶ 21. As explained *supra*, the federal claim fails for multiple reasons. Each of Midwest's state law claims—all of which are substantively derivative of its federal claim—thus fail for at least one of these reasons, and all should be dismissed. *Tamoxifen Citrate Antitrust Litig.*, 277 F. Supp. 2d at 139.

## VI.    The Court Should Dismiss Midwest's Claims With Prejudice

The FAC is Midwest's second bite at the apple, as it already amended its initial Complaint. Dkt. 13. Yet, the FAC still fails to state any claim. That demonstrates further amendment would be futile, and this Court should thus dismiss Midwest's claims with prejudice. *See Collins v. Sonic Corp.*, 2022 WL 2298194, at *4 (W.D. Okla. June 22, 2022) (granting motion to dismiss with prejudice where complaint was plaintiff's "second complaint filed in this action" and plaintiff failed to specify how it could cure deficiencies).

## <u>CONCLUSION</u>

For the foregoing reasons, Midwest's claims should be dismissed with prejudice.

---

[7]  *Abbot Labs. v. Durrett*, 746 So. 2d 316, 339 (Ala. 1999) (Alabama); *Exxon Corp. v. Time Indus., Inc.*, 1974 WL 838, at *1 (E.D. Mich. Feb. 7, 1974) (Michigan); *Iron Workers Dist. Council of New England Health & Welfare Fund v. Teva Pharm. Indus. Ltd.*, 734 F. Supp. 3d 145, 162 (D. Mass. 2024) (Mississippi); *Mueller Co. v. U.S. Pipe & Foundry Co.*, 2003 WL 22272135, at *6 (D.N.H. Oct. 2, 2003) (New Hampshire); *Lawrence v. UMLIC-Five Corp.*, 2007 WL 2570256, at *7 (N.C. Super. June 18, 2007) (North Carolina); *Anziulewicz v. Bluefield Cmty. Hosp., Inc.*, 531 F. Supp. 49, 53 (S.D. W. Va. 1981) (West Virginia); *Maryland Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1504 (E.D. Wis. 1996) (Wisconsin).

DATED:   April 4, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

*/s/ Kevin Y. Teruya*
Kevin Y. Teruya
  kevinteruya@quinnemanuel.com
Adam B. Wolfson
  adamwolfson@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile:  (213) 443-3100

Melissa J. Baily
  melissabaily@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile:  (415) 875-6700

*Attorneys for Defendant Johns Manville
Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April, 2025, I caused a true and correct copy of the

foregoing document to be filed via CM/ECF, which will generate notice by electronic mail to all

counsel who have appeared via CM/ECF.


*/s/ Kevin Y. Teruya*
Kevin Y. Teruya