IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-534-NRN

**MIDWEST INSULATION SERVICES INC.,**

    Plaintiff on Behalf of Itself
    And Those Similarly Situated

    **v.**

**JOHNS MANVILLE CORPORATION,**

    Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**[ORAL ARGUMENT REQUESTED]**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

I.       Midwest Fails To Explain How Most of Its Claims Are Not Time-Barred ......... 1

II.      Midwest Still Cannot Assert State Law Claims Outside Nebraska .................... 3

III.     Midwest's Anticompetitive Conduct Allegations Remain Implausible ............... 5

IV.     Midwest Fails To Address Its Antitrust Injury Deficiencies ............................... 7

V.      Midwest Still Fails To Plausibly Allege a National Geographic Market ............ 9

VI.     Midwest's State Law Damages Claims Still Violate Rule 8 and Fail ................ 10

VII.   Midwest Still Fails To Establish Leave To Amend Should Be Given ................ 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES
**Page**

**CASES**

*Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*,
   2023 WL 7277313 (D. Colo. Sept. 29, 2023) ................................................................. 9, 10

*Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*,
   843 F.3d 1225 (10th Cir. 2016) ............................................................................................ 3

*Bookends & Beginnings LLC v. Amazon.com, Inc.*,
   2022 WL 18144916 (S.D.N.Y. Aug. 24, 2022) ..................................................................... 5

*Brown v. JBS USA Food Co.*,
   2025 WL 918804 (D. Colo. Mar. 26, 2025) .......................................................................... 3

*Champagne Metals v. Ken-Mac Metals, Inc.*,
   458 F.3d 1073 (10th Cir. 2006) ............................................................................................ 3

*Chase Mfg., Inc. v. Johns Manville Corp.*,
   2020 WL 1433504 (D. Colo. Mar. 23, 2020) .................................................................... 7, 9

*Chase Mfg., Inc. v. Johns Manville Corp.*,
   84 F.4th 1157 (10th Cir. 2023) ............................................................................................. 7

*Collins v. Sonic Corp.*,
   2022 WL 2298194 (W.D. Okla. June 22, 2022) .................................................................. 10

*Farag v. Health Care Serv. Corp.*,
   2017 WL 2868999 (N.D. Ill. July 5, 2017) ........................................................................... 3

*Humana Inc. v. Celgene Corp.*,
   2022 WL 1237883 (D.N.J. Apr. 27, 2022) ........................................................................... 3

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018) ................................................................................................... 4

*In re Crocs, Inc. Sec. Litig.*,
   2013 WL 4547404 (D. Colo. Aug. 28, 2013) ....................................................................... 4

*In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*,
   2013 WL 5503308 (D.N.J. Oct. 2, 2013) .............................................................................. 8

*In re: EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
   336 F. Supp. 3d 1256 (D. Kan. 2018) ............................................................................... 4, 5

*In re Nexium Antitrust Litig.*,
    968 F. Supp. 2d 367 (D. Mass. 2013) ....................................................................................... 3

*In re Photochromic Lens Antitrust Litig.*,
    2011 WL 13141933 (M.D. Fla. Oct. 26, 2011) ..................................................................... 8, 9

*In re Qualcomm Antitrust Litig.*,
    292 F. Supp. 3d 948 (N.D. Cal. 2017) ..................................................................................... 10

*In re Remicade Antitrust Litig.*,
    345 F. Supp. 3d 566 (E.D. Pa. 2018) ......................................................................................... 3

*Jimenez v. Junius Real Es*t.,
    2017 WL 9534737 (S.D.N.Y. June 7, 2017) ............................................................................. 5

*Khalik v. United Air Lines,*
    671 F.3d 1188 (10th Cir. 2012) ................................................................................................ 2

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) .................................................................................................................. 3

*LAI v. USB-Implementers F., Inc.*,
    2014 WL 12600969 (C.D. Cal. Nov. 21, 2014) ........................................................................ 6

*Langan v. Johnson & Johnson Consumer Companies*, *Inc.*,
    897 F.3d 88 (2d Cir. 2018) ....................................................................................................... 4

*Mata v. Anderson*,
    635 F.3d 1250 (10th Cir. 2011) ................................................................................................ 3

*Morrison v. YTB Int'l, Inc.*,
    649 F.3d 533 (7th Cir. 2011) .................................................................................................... 4

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ..................................................................................................... 4

*Pistacchio v. Apple Inc.*,
    2021 WL 949422 (N.D. Cal. Mar. 11, 2021) ............................................................................ 7

*Power v. Sandbox Logistics, LLC*,
    2017 WL 1063467 (D. Colo. Mar. 17, 2017) ........................................................................... 5

*Quint v. Vail Resorts, Inc.*,
    2022 WL 4550087 (D. Colo. July 8, 2022) .............................................................................. 5

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*,
    2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ...........................................................................10

*Thomas v. Metro. Life Ins. Co.*,
    631 F.3d 1153 (10th Cir. 2011) ................................................................................................4

*TV Commc'ns Network, Inc. v. ESPN, Inc.*,
    767 F. Supp. 1062 (D. Colo. 1991).........................................................................................2

**RULES**

Fed. R. Civ. P. 8....................................................................................................................10

Fed. R. Civ. P. 9(b) ................................................................................................................6

**STATUTES**

Federal Trade Commission Act, 15 U.S.C. §§ 41–58 ..................................................................2

Securities Act, 15 U.S.C. § 77e .....................................................................................................4

# INTRODUCTION

JM detailed in its motion (Dkt. 16, "Mot.") how Midwest fails to plausibly allege: the timeliness of substantially all its claims; why Midwest—a Nebraska resident—can assert claims under 25 other states' laws; anticompetitive conduct; antitrust injury; geographic market; how repeating the same rote allegations satisfies each state law's disparate requirements; or how the complaint (Dkt. 13-1, "FAC") identifies, much less establishes, the elements for non-mutual collateral estoppel as to the earlier *TPS* case.

Nothing in Midwest's opposition (Dkt. 28, "Opp.") establishes otherwise. Instead, Midwest largely ignores JM's actual arguments and cited authorities.[1] When it does attempt to engage with them, it misstates them, the scope of the earlier *TPS* case, ***and*** its own allegations, such that Midwest fails to address the fatal flaws that JM raised. Midwest's FAC, and this case, should therefore be dismissed with prejudice.

# ARGUMENT

## I. Midwest Fails To Explain How Most of Its Claims Are Not Time-Barred

Midwest concedes all but three of its claims are subject to a four-year or less limitations period, but asserts they are still timely. Opp. 3–6. This assertion is wrong.

***First***, Midwest asserts its claims are timely since its allegations "put JM on 'notice' as to the grounds for [its] claims." Opp. 3. The issue is not notice; it is whether

---

[1] As one example, JM's motion explained how Midwest's FAC fails to plausibly allege the requirements for non-mutual collateral estoppel as to the earlier *TPS* case. Mot. 8–10. Midwest does not actually engage with JM's arguments and authorities and thus concedes them. The closest it comes is two footnotes (Opp. nn. 2–3), which: (1) point to other cases in which estoppel may or may not been applied; and (2) state that it would later address estoppel in its now-filed brief on one-way intervention. Neither suffices to establish whether Midwest's ***FAC*** plausibly alleges estoppel (it does not).

1

Midwest ***plausibly*** alleges timely claims. Its citation to *Khalik v. United Air Lines*, confirms plausibility is the "new standard." 671 F.3d 1188, 1190–93 (10th Cir. 2012). Its reliance on *TV Commc'ns Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1069 (D. Colo. 1991) for the "fair notice" standard is inapt, as that case pre-dates *Twombly*.

***Second***, Midwest claims it can rely on "the same" conduct from the earlier *TPS* trial to establish timely claims here. Opp. 3–5. As JM explained (Mot. 6)—and Midwest concedes—*TPS* only involved conduct ending by June 2020. *TPS* thus does not help Midwest plausibly establish that conduct ***continued***. It also states continuing conduct can be inferred from market factors, but its cited cases (Opp. 3 n.1) address whether the FTC Act authorizes the FTC to obtain an injunction against future conduct based on past violations. Neither addresses the statute of limitations for private plaintiffs.

Midwest's block quotation of conclusory allegations also does not help. Opp. 3–5. Most relate to market definition and share, distribution chain, margins and profits, and overcharges. That says nothing about whether JM engaged in the alleged ***conduct*** during the limitations period. Even the few conduct references merely conclude JM's conduct "continues" (and similar). Opp. 4–5. What Midwest does ***not*** identify—because they do not exist—are any allegations in the FAC of specific, post-2020 instances of threats or disparagement. Midwest just speculates with no factual allegations that such conduct "continued." The cases JM cited (Mot. 6–7 & n.4), which Midwest fails to address, confirm such speculation does not suffice to plausibly allege timely claims.

***Third***, Midwest fails to satisfy the continuing violation doctrine. Opp. 5–6.

2

While it claims it paid overcharges during the limitations period, the doctrine also requires "***a new and independent act***" during that period. *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 843 F.3d 1225, 1248 (10th Cir. 2016).[2] Indeed, the doctrine "is triggered 'by continual unlawful acts, not by continual ill effects from the original violation."[3] *Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011); *Farag v. Health Care Serv. Corp.*, 2017 WL 2868999, at \*9–10 (N.D. Ill. July 5, 2017) (dismissing claim, "[i]f the mere charging of a monopoly price constitutes a 'continuing violation' . . . we have indefinitely lengthened the statute of limitation"). Midwest's failure to plausibly allege new conduct makes the doctrine inapt.

## II.  Midwest Still Cannot Assert State Law Claims Outside Nebraska

Midwest fails to establish that it—as the sole named plaintiff, and a Nebraska resident—can assert other states' laws for absent putative class members. It first points to a supposed "growing consensus," Opp. 12–13, but the decisions it points to are, as noted below, not persuasive because they address non-analogous securities claims under a single statute or directly contradict in-circuit authorities, including

---

[2]  Midwest's other cases (Opp. 5–6 & n.3) do not require differently. *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 585 (E.D. Pa. 2018) (not addressing timeliness); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (requiring "new overt act"); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1090 n.16 (10th Cir. 2006) (claims timely, as specific, new threat "within the limitations period"); *In re Nexium Antitrust Litig.*, 968 F. Supp. 2d 367, 381–82, 399 (D. Mass. 2013) (out-of-circuit, pay-for-delay pharmaceutical case, defendants continued to adhere in limitations period to pre-period deal to stay out of market); *Humana Inc. v. Celgene Corp.*, 2022 WL 1237883, at \*5–9 (D.N.J. Apr. 27, 2022) (similar, out-of-circuit, "ongoing scheme").

[3]  Midwest also suggests it satisfies the doctrine since it alleges the "conduct at issue . . . continued into the limitations period," Opp. 5, but it does not. As explained *supra*, Midwest does not allege specific new instances of conduct during the limitations period, unlike its cited case, *Brown v. JBS USA Food Co.*, 2025 WL 918804, at \*2–\*5, \*20 (D. Colo. Mar. 26, 2025) (new exchanges of wage information during limitations period).

3

binding precedent, as discussed below.[4]

Next, Midwest claims JM misrelies on the Tenth Circuit's *Thomas* opinion (which it claims is limited to "appellate standing") and lower-court decisions (which it admits are on point, but says are old). Opp. 13 & n.5. *Thomas* held that "[p]rior to class certification, the named plaintiffs' failure to maintain a live case or controversy is fatal" and "that unnamed plaintiffs might have a case or controversy is irrelevant." *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1159 (10th Cir. 2011). If that were limited to appeals, it would make no sense to discuss class standing before the lower court; also, the Tenth Circuit rejected Midwest's distinction, explaining the required standing is the same whether for "appellate review" or "appearing in courts of first instance." *Id.*

Midwest also elsewhere relies (Opp. 7 n.4) on the in-circuit decision in *In re: EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256 (D. Kan. 2018). But it omits that case in 2018: (1) recognizes *Thomas* as "binding Circuit precedent" requiring dismissal of "antitrust state law claims for which the Class Complaint includes no named plaintiff from that state"; (2) continues to apply JM's cited in-circuit lower court cases—*Smith* and the earlier, lower court decision in *Thomas* (which dismissed on precisely this non-residency basis); and (3) notes "other district courts in

---

[4] *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (plaintiff asserting claim under Securities Act could assert claims under same statute for absent class members, not whether named plaintiff could assert class claims under states in which it is not resident on behalf of absent class members); *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *2 (D. Colo. Aug. 28, 2013) (similar); *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93–95 (2d Cir. 2018) (out-of-circuit); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018) (same); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (out-of-circuit).

4

the Tenth Circuit" have dismissed claims on these grounds.[5] *Id.* at 1310–11.[6]

### III. Midwest's Anticompetitive Conduct Allegations Remain Implausible

Midwest's opposition fails to explain how it plausibly alleges either anticompetitive threats or disparagement. *Compare* Mot. 10–12; *with* Opp. 6–8.

***First***, Midwest asserts that "[a] verdict that JM monopolized . . . *at least* through June 2020" and JM's "continuing high market share . . . compel[] the inference" JM later acted anticompetitively. Opp. 6. It is wrong. As to the former, the docket confirms *TPS* only addressed conduct ***through*** (not "at least") June 2020. Mot. 6. As to the latter, Midwest claims the "the mere existence of government investigations" indicates "the underlying conduct occurred," but: (a) Midwest alleges no investigation; and (b) in any case, a verdict or an investigation regarding conduct in an earlier time period does not make plausible that the conduct occurred in a later period. *Bookends & Beginnings LLC v. Amazon.com, Inc.*, 2022 WL 18144916, at *11 (S.D.N.Y. Aug. 24, 2022) (dismissing claims, as "prior conspiracy is not alone probative of present collusion" and "[i]llegal behavior elsewhere in time . . . does not generally allow the inference of an immediate conspiracy."). Nor does "high market share" make plausible that any anticompetitive conduct occurred so as to result in that share. *Jimenez v. Junius Real Es*t., 2017 WL 9534737, at *7–*8 (S.D.N.Y. June 7, 2017) (claim dismissed, because

---

[5] Midwest cites *Quint v. Vail Resorts, Inc.*, 2022 WL 4550087, at *1 (D. Colo. July 8, 2022) and *Power v. Sandbox Logistics, LLC*, 2017 WL 1063467, at *1 (D. Colo. Mar. 17, 2017) which are in-circuit, but neither addresses the Tenth Circuit's *Thomas* opinion.

[6] This rule avoids the problem of allowing a named plaintiff with no injury under the laws of other states to embark on lengthy and expensive class discovery of facts in and argument over laws of many otherwise irrelevant states. Mot. 7–8, 14–15.

5

even assuming monopoly power, insufficient allegations of anticompetitive conduct).

***Second***, Midwest claims that, as to threats, there is no "particularity pleading standard" and JM "ignores the verdict and evidence supporting" Midwest's allegations. Opp. 7. This is a *non sequitur*; it is Midwest's burden to plausibly identify what acts JM committed ***during the limitations period***. That is not a heightened standard; it is basic pleading. *LAI v. USB-Implementers F., Inc.*, 2014 WL 12600969, at *3–*4 (C.D. Cal. Nov. 21, 2014) (dismissing antitrust claims and rejecting argument requiring "answer [to] the basic questions: who, did what, to whom (or with whom), where, and when" was akin to "the heightened pleading standard of Rule 9(b)"). While Midwest invokes the *TPS* verdict and "evidence supporting the allegations" like "references to specific emails," Opp. 7, the point is that neither says anything about alleged threats during the limitations period: *TPS* only involved conduct ending by 2020, and the "emails" cited in the FAC are all in the 2018/2019 time frame. FAC ¶¶ 43–45, 48.

***Third***, Midwest's arguments about disparagement fail. Opp. 7–8. It concedes disparagement is subject to a six-part test, but quibbles with whether it must meet all or just some of the parts. That is a red herring: the FAC contains two allegations about sporadically "disparaging the quality of TPS's calsil by falsely raising concerns about asbestos and silica" (FAC ¶¶ 40, 49), which fails to address materiality, reliance, buyer knowledge, longevity, and offset (five of the six elements). Midwest also invokes from *TPS* the lower court's motion to dismiss and the Tenth Circuit's summary judgment rulings, but neither helps. The former addressed ***TPS's*** complaint, which included

6

allegations as to each factor. *Chase Mfg., Inc. v. Johns Manville Corp.*, 2020 WL 1433504, at *12–*13 (D. Colo. Mar. 23, 2020). A different, earlier complaint does not make **Midwest's** allegations (or lack thereof) about later, supposed disparagement plausible. Moreover, the latter, which affirmed summary judgment for JM on disparagement, found TPS "waived" its disparagement theory, and it was only relevant as evidence to be considered alongside alleged threats (not a standalone theory). *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1167, 1173 n.19 (10th Cir. 2023).

### IV.    Midwest Fails To Address Its Antitrust Injury Deficiencies

Midwest fails to plausibly allege antitrust injury, let alone a causal connection between that alleged injury and JM. Mot. 12–13. Its opposition does not fix this flaw.

***First***, Midwest's argument that it need not plausibly allege "supracompetitive prices" to establish **market power**—a separate element—misses JM's point. Opp. 10–11. Midwest does not dispute its only claimed injury is "supracompetitive prices," or that besides incanting "supracompetitive," it alleges no facts making that plausible. It only argues it need not allege supracompetitive prices—since it alleges other means (market share)—to show market power, but that is different from antitrust injury. Where, as here, "[t]he complaint is wholly lacking in any substantive allegations regarding the alleged 'supracompetitive' price," dismissal for lack of "antitrust damage" is appropriate, as confirmed in *Pistacchio v. Apple Inc.*, which JM cited (Mot. 12) and Midwest failed to address. 2021 WL 949422, at *2 (N.D. Cal. Mar. 11, 2021).

***Second***, Midwest's causation arguments fail. Opp. 8–10. Its assertion that the

7

"direct purchaser standard applied by *Illinois Brick* to federal claims is not required for state law claims" attacks a strawman: JM is not arguing Midwest's claims fail because Midwest is an indirect (rather than direct) purchaser. Instead, they fail because Midwest's allegations JM "caused" it to pay higher prices for calsil it bought from someone other than JM are conclusory and implausible, which fails *Twombly*.

This is a simple point that Midwest tries to obscure by invoking the *Associated General Contractors* standing test. Opp. 9–10. As JM explained, Midwest does not plausibly plead the connection between its injury and JM's conduct, including because it does not plausibly allege how JM's supposed threats and disparagement to distributors affected the prices—set by someone other than JM—that Midwest later paid to others (not JM), at some unspecified point down the supply chain.[7] This is fatal under *Twombly*'s basic pleading standard—*AGC* is a red herring.[8] Making this point is JM's cited case, *In re Photochromic Lens Antitrust Litig.*, which Midwest still seems to not understand. Midwest notably does not quote the rest of *Photochromic*'s holding in the same footnote it cites, which continued: "[e]ven under a less stringent standard" than the *AGC* standard, the indirect purchasers' allegations there "lack[ed] sufficient

---

[7]   Midwest states causation can be inferred since the "supply chain is narrow," "distributors pass on" overcharges, and it bought "directly" from JM's distributors "one step removed" from JM. Opp. 8–9. But it elsewhere concedes that is false, stating it "***mostly*** buy[s] one step down the chain" and it and putative class members also buy from others down the chain like "wholesalers" and "resellers." *Id.* 8. That highlights the multiple links in the chain, which requires explication the FAC fails to provide.

[8]   Although Midwest claims the *AGC* factors do not apply to its state law claims, a case it relies on holds they ***do*** apply to Nebraska antitrust claims. *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308, at *15 (D.N.J. Oct. 2, 2013). As explained *supra*, that is the only state law claim Midwest can pursue.

8

factual allegations" to establish basic causal injury. 2011 WL 13141933, at *4 n.8 (M.D. Fla. Oct. 26, 2011). That is the case here, and bringing state law antitrust claims in federal court does not somehow allow Midwest to evade *Twombly*'s requirements.

## V. Midwest Still Fails To Plausibly Allege a National Geographic Market

Midwest fails to establish that its single allegation plausibly establishes a national geographic market. Opp. 11–12. It points to the motion to dismiss order in *TPS*, but whether JM challenged the geographic market in a different plaintiff's case covering a different period is irrelevant: JM challenges ***Midwest's*** allegations. Moreover, Midwest omits the markets found to be adequately pled in the cited portion of *TPS*—"fiberglass pipe insulation and expanded perlite"—are ***not*** the market Midwest alleges here and do not help it. FAC ¶ 24; *Chase*, 2020 WL 1433504, at *6.

Further, Midwest acknowledges *TPS* is a "competitor lawsuit" (Opp. 11), but fails to address JM's point (Mot. 13–14) that the geographic scope of competition as between competitors ***JM and TPS*** for sales to distributors does not dictate the scope of competition for sales ***by*** distributors and others ***to*** indirect purchasers. The FAC contains no such explanation, nor any hint as to why an indirect purchaser in Omaha (like Midwest) would look to buy calsil from sellers across the entire country. Midwest narrowly reads JM's cited case, *Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, as only about state licensing, but Midwest fails to engage with its logic that plausibly pleading a geographic market requires alleging "factors such as price, transportation/delivery costs, customer preferences, etc.," none of which

9

Midwest alleges. 2023 WL 7277313, at *6 (D. Colo. Sept. 29, 2023); *see also* FAC ¶ 29.

## VI.   Midwest's State Law Damages Claims Still Violate Rule 8 and Fail

By failing to respond to JM's argument that pleading claims under various states' laws with disparate requirements but using the same rote allegations violates Rule 8, Midwest concedes it. Mot. 14–15; Opp. 14–15. Indeed, Midwest's admission that its generic allegations repeated for each state do not actually state Kansas or Alabama claims (Opp. 14) highlights the problem. Moreover, even assuming Midwest could pursue all its state law claims (it cannot, other than Nebraska), it must plead and satisfy the elements of each (it cannot, as they fail with its federal claim).[9]

## VII.  Midwest Still Fails To Establish Leave To Amend Should Be Given

Midwest attempts to distinguish JM's cited case, *Collins v. Sonic Corp.*, Opp. 15, but never addresses its reasoning that dismissal should be with prejudice unless the plaintiff provides "argument or analysis . . . regarding how the pleading deficiency could be cured" through amendment. 2022 WL 2298194, at *4 (W.D. Okla. June 22, 2022). It provides no proposed amendment here, so leave to amend should be denied.

## CONCLUSION

For these reasons, Midwest's claims should be dismissed with prejudice.

---

[9]  Despite bringing only monopolization claims, Midwest now tries to save its California, New York, and Tennessee state law claims by arguing they are not "unilateral" but "coercive and exclusive dealing arrangements[.]" Opp. 14. Unlike its cited cases, Midwest's FAC challenges ***threats***, not ***agreements*** (*i.e.*, a meeting of the minds with third parties, which is required for multilateral conduct). *Compare In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 974 (N.D. Cal. 2017) (licensing ***agreement***); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233, at *27 (S.D.N.Y. Dec. 26, 2018) (distribution and other "***agreements***").

10

DATED:   June 6, 2025

        QUINN EMANUEL URQUHART & SULLIVAN, LLP

        */s/ Kevin Y. Teruya*
Kevin Y. Teruya
  kevinteruya@quinnemanuel.com
Adam B. Wolfson
  adamwolfson@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile:  (213) 443-3100

Melissa J. Baily
  melissabaily@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile:  (415) 875-6700

*Attorneys for Defendant Johns Manville Corporation*

11

## CERTIFICATE OF NON-USE OF
## GENERATIVE ARTIFICIAL INTELLIGENCE FOR DRAFTING

I hereby certify that no portion of this filing was drafted by generative artificial intelligence.

*/s/ Kevin Y. Teruya*
Kevin Y. Teruya

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2025, I caused a true and correct copy of the foregoing document to be filed via CM/ECF, which will generate notice by electronic mail to all counsel who have appeared via CM/ECF.

*/s/ Kevin Y. Teruya*
Kevin Y. Teruya

12